# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christopher Evans, | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | No. 225 C.D. 2023 |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

| | | |
|---|---|---|
| Christopher Evans, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 226 C.D. 2023 |
| | : | Submitted: May 7, 2024 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
               **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
               **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED: June 7, 2024**

Christopher Evans (Claimant) petitions for review of two Orders of the Unemployment Compensation Board of Review (Board).[1] The first affirmed a Referee's Decision finding Claimant's appeal of a monetary redetermination for Pandemic Unemployment Assistance (PUA) benefits[2] was untimely. The second

---

[1] The Court consolidated these two matters at the Board's request. (*See* May 3, 2023 Order.)

[2] PUA benefits were provided under Section 2102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020, 15 U.S.C. § 9021, to individuals ineligible for regular
**(Footnote continued on next page…)**

affirmed a Referee's Decision finding Claimant liable for a nonfraud overpayment of $12,818.00. Claimant asserts his appeal to the Referee should be considered timely, or in the alternative, the matter should be remanded for a hearing on the timeliness issue, and the nonfraud overpayment should be removed until the timeliness issue is resolved. Upon review, we reverse the Board's Orders and remand for further proceedings, as detailed herein.

## I.     BACKGROUND

On July 18, 2020, Claimant filed a claim for PUA benefits and began receiving PUA benefits that month. (Certified Record (C.R.) at 4-10, 12.)[3] On November 16, 2020, a Monetary Redetermination was issued, reflecting Claimant was financially eligible for a weekly benefit amount of $195.00 in PUA. (*Id.* at 114.) The Monetary Redetermination stated that any appeal therefrom must be received or postmarked by December 1, 2020. (*Id.* at 116.) On June 4, 2021, a Notice of Determination Non-Fraud PUA Overpayment was issued, stating Claimant received $12,818.00 in PUA benefits to which he was not entitled for the weeks ending March 21, 2020 through November 7, 2020. (*Id.* at 16.) The reason provided was "because a monetary redetermination was made which resulted in a revised weekly benefit amount." (*Id.*) On June 17, 2021, Claimant appealed the determinations. (*Id.* at 31, 122.) A notice scheduling a telephone hearing before a referee was issued, which listed the "issues to be decided at the hearing" as "1) Whether [] [C]laimant filed a timely and valid appeal from the initial determination(s). 2) Whether [] [C]laimant

unemployment compensation (UC) or extended state or federal benefits and who were unemployed or unable to work due to specifically enumerated COVID-related reasons.

[3] Because of the two dockets before the Referee and Board, many documents appear twice in the certified record. In those instances, we cite only to the first.

is eligible for . . . []PUA[].  3) Whether [] [C]laimant is overpaid due to receiving P[UA].  4) Whether [] [C]laimant is financially eligible for a higher PUA weekly benefit amount." (*Id.* at 41.)

A consolidated hearing on both appeals was held August 26, 2021, by telephone.  Claimant, proceeding pro se, participated.  The Referee identified the issues similar to those that appeared in the hearing notice. (*Id.* at 56.)  After the Referee identified the exhibits, Claimant spent the remainder of the hearing discussing two checks he supposedly was issued but never received.[4] (*Id.* at 57-62.)  When the Referee asked if Claimant had anything else he wanted to add, Claimant responded, "[n]o, is there anything else that I should add to help my case here or?" (*Id.* at 62.)  The Referee stated she "d[idn]'t have any other questions at this time," and Claimant stated, "Okay.  I think that's everything." (*Id.*)  The Referee closed the hearing. (*Id.*)

On August 31, 2021, the Referee issued a Decision as to Claimant's appeal of the Monetary Redetermination, finding as follows:

> 1.     On November 16, 2020, a Notice of Monetary Re[d]etermination established a weekly benefit amount of $195.00 for [] Claimant's application for benefits date of March 15, 2020.
>
> 2.     A [c]opy of the Notice of Monetary Re[d]etermination was mailed to [] Claimant's last known post office address on the above date and provided in the Claimant's PUA website portal.
>
> 3.     The Notice of Monetary Re[d]etermination was not returned by the postal authorities as being undeliverable.
>
> 4.     The Notice of Monetary Re[]determination informed [] Claimant that he had until December 1, 2020, to file an appeal if [] Claimant disagreed with the determination.

---

[4] These checks are not at dispute in these appeals.  The Referee referred the issue to the Service Center to investigate further. (C.R. at 67.)

3

5.  [] Claimant filed his appeal to the Monetary Re[d]etermination on June 17, 2021.

6.  [] Claimant was not misinformed nor in any way misled regarding the right of appeal or the need to appeal.

(*Id.* at 146.) The Referee determined Claimant's appeal was untimely under Section 501(e) of the Law, which provides a 15-day appeal period, and that provision is mandatory. (*Id.* at 147.) Accordingly, the Referee dismissed Claimant's appeal. (*Id.* at 148.)

The Referee issued a separate decision the same day in relation to the overpayment, finding:

1.  [] Claimant initially filed a . . . []PUA[] claim with an application for benefits effective March 15, 2020.

2.  [] Claimant established a weekly benefit amount of $572.00.

3.  A Notice of Determination was issued on November 16, 2020, in which [] Claimant's weekly benefit amount was reduced to be $195.00.

4.  On June 17, 2021, [] Claimant filed an untimely appeal to the determination issued November 16, 2020.

5.  [] Claimant's appeal to the Determination dated November 16, 2020, was assigned referee office docket number 2021016368-AT.

6.  In the matter at 2021024358-AT, [] Claimant's appeal was found untimely.

7.  The Determination issued November 16, 2020, establishing [] Claimant's Weekly Benefit Amount as $195.00 stands.

8.  [] Claimant was issued PUA benefits based on the $572.00 weekly benefit rate for claim weeks ending March 21, 2020[,] through November 7, 2020.

4

(*Id.* at 66.)  The Referee reasoned that while Claimant received benefits for which he was not entitled, "[t]he Referee is unable to conclude that [] Claimant engaged in fraud in order to receive the excessive PUA benefits." (*Id.* at 67.)  Thus, the Referee found only a nonfraud overpayment in the amount of $12,818.00.  (*Id.* at 68.)

Claimant appealed both decisions to the Board.  (*Id.* at 78-79.)  In his appeal, Claimant stated that when the November 20, 2020 Monetary Re-Determination was issued, he "was of the understa[nd]ing that it was not an over[ ]payment, that it was for payments going forward." (*Id.* at 79.)  Claimant further stated:

> [W]hen it came to getting answers, getting someone on the phone or any information needed to properly understand what that decision meant[,] it was met with resistance, hurdles and blockades.  When and IF you got someone on the phone and requested answers[,] calls would mysteriously end or drop, the person on the other end would give incorrect or no information and the entire system was a mess.

(*Id.*)

In two separate orders, both issued February 22, 2023, the Board adopted and incorporated the findings and conclusions from each of the Referee's decisions and affirmed those decisions.  (*Id.* at 85, 165.)  Claimant then filed counseled petitions for review of those orders with this Court.[5]

## II.    PARTIES' CONTENTIONS

Claimant argues there was a breakdown in the administrative process, and there would be no undue hardship in allowing his appeal to proceed, as there is no employer who would suffer prejudice.  Claimant maintains the record is incomplete

---

[5] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

and therefore a remand hearing should be ordered to allow for development of the record on the timeliness issue. According to Claimant, although one of the purposes of the hearing before the Referee was to address the timeliness issue, "[a]t no point in the hearing was any testimony or evidence taken regarding the timeliness of [Claimant]'s appeal. . . ." (Claimant's Brief (Br.) at 14.) The only evidence of timeliness, Claimant asserts, is information contained within his appeal to the Referee. Claimant argues Finding of Fact 6, that "Claimant was not misinformed nor in any way misled regarding the right of appeal or the need to appeal," is not supported by any record evidence. (*Id.* (quoting Finding of Fact ¶ 6).) Until the issue of the timeliness of his appeal is resolved, Claimant asks that the overpayment be removed.

The Board argues Claimant did not raise any argument as to the untimeliness issue in his appeal to the Board and, thus, the issue is waived under the Rules of Appellate Procedure and well-established caselaw. According to the Board, Claimant argued "he did not understand the determinations, [] the Referee did not have knowledge of Claimant's allegation that he had not received payments, complained about a lack of communication from the UC department, and requested that he not be required to pay the money back." (Board's Br. at 7.) However, the Board asserts "Claimant did not specifically mention the dismissal of his appeal as untimely, argue that he had good cause for the late appeal, or assert that the Referee did not discharge her duties." (*Id.*) The Board argues Claimant raised multiple issues for the first time in his brief to this Court, including: "(1) Claimant's appeal should be deemed timely because there was a breakdown in [the] administrative process and/or non-negligent circumstances; (2) the Referee erred in not eliciting testimony on Claimant's late appeal;[] and (3) Finding of Fact 6 is not supported by

6

substantial evidence." (*Id.* at 9 (citing Claimant's Br. at 12-14).) Because Claimant failed to preserve any issues related to untimeliness, the Board asserts the Court should dismiss that petition for review. (*Id.* at 10.) The Board agrees that Claimant's appeal of the nonfraud overpayment was timely but because Claimant's appeal of the Monetary Redetermination was untimely, the Board asserts that determination remains binding and Claimant is liable for an overpayment of what he received and to what he was entitled.

## III.   DISCUSSION

As it is a threshold issue, we begin with the Board's argument that Claimant did not preserve his timeliness arguments for appellate review as Claimant purportedly did not raise those arguments first with the Board. Rule 1551(a) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part, that "[o]nly questions raised before the government unit shall be heard or considered" on appeal to a court. Pa.R.A.P. 1551(a). *See also Crabbe v. Unemployment Comp. Bd. of Rev.*, 179 A.3d 1183, 1189 (Pa. Cmwlth. 2018) ("The failure of [the c]laimant to raise the issue with the Board impairs our ability to review the Board's decision with respect to that issue.").

Upon review of Claimant's appeal to the Board, we conclude that Claimant adequately preserved the issue of timeliness, including whether there was an administrative breakdown that contributed to the delay to warrant nunc pro tunc relief. In his appeal, Claimant specifically stated that communicating with UC officials was fraught with issues, (C.R. at 79), something the Board in its brief even acknowledged he raised, (Board's Br. at 7). While Claimant's appeal may not have been artfully drafted, it provided greater detail of alleged errors than other cases

7

where we have determined an issue was adequately raised to prevent waiver. For example, in *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, a claimant appealed a referee's decision finding he engaged in willful misconduct by simply stating he did not "agree with [the r]eferee's decision." 949 A.2d 338, 341 (Pa. Cmwlth. 2008). We held this was sufficient to preserve the more specific issues the claimant raised. *Id.* at 343. Likewise, in *Black Lick Trucking, Inc. v. Unemployment Compensation Board of Review*, we held the mere assertion of "errors of law and fact" in their appeal to the Board was sufficient to preserve the claimants' more specific arguments. 667 A.2d 454, 456 (Pa. Cmwlth. 1995). In doing so, we explained that "the issues which were decided by the [j]ob [c]enter were the same issues addressed by the referee, and were subsequently discussed by the Board." *Id.* at 458. That is precisely what occurred here. The Referee expressly considered the timeliness of Claimant's appeal, as did the Board. Thus, we will not consider this issue waived.

Concluding the arguments are adequately preserved, we turn to the merits of those arguments. Section 501(e) of the Unemployment Compensation Law (UC Law)[6] governs an appeal of a local Service Center's determination. At the relevant time, Section 501(e) provided:

> [u]nless the claimant or last employer or base-year employer of the claimant files an appeal with the board, from the determination contained in any notice required to be furnished by the [D]epartment [of Labor and Industry (Department)] under section five hundred and one (a), (c) and (d), **within fifteen calendar days** after such notice was delivered to him personally, or was mailed to his last known post office address, and applies for a hearing, **such determination of the**

---

[6] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 821(e) (providing that a determination is final, unless an appeal is made within 15 days after delivery of notice). Section 501(e) has since been amended to provide 21 days to appeal. *See* Section 5(2) of the Act of June 30, 2021, P.L. 173.

8

**department, with respect to the particular facts set forth in such notice, shall be final** and compensation shall be paid or denied in accordance therewith.

43 P.S. § 821(e) (emphasis added); *see also* 34 Pa. Code § 101.82(a) ("A party seeking to appeal a Department determination shall file an appeal . . . on or before the 15th day after the date on which notification of the decision of the Department was . . . mailed to him at his last known post office address.").[7] It is well settled that "[t]he fifteen-day time period in which to file an appeal is mandatory. If an appeal is not filed within that time limit, the determination becomes final, thereby depriving the Board of jurisdiction over the matter." *UGI Utils., Inc. v. Unemployment Comp. Bd. of Rev.*, 776 A.2d 344, 347 (Pa. Cmwlth. 2001). Because appeal deadlines are jurisdictional, the party seeking to file a late appeal bears a heavy burden to show that one of the limited circumstances in which an untimely appeal may be considered exists. *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). Allowable exceptions include fraud or a breakdown in the administrative process, or when there is a "non-negligent failure to file a timely appeal which was corrected within a very short time, during which any prejudice to the other side of the controversy would necessarily be minimal." *Bass v. Commonwealth*, 401 A.2d 1133, 1135-36 (Pa. 1979).

Here, the documentary evidence shows that Claimant sought to appeal the November 2020 Monetary Redetermination in June 2021, well past the 15-day deadline. (C.R. at 31, 122.) Thus, Claimant's appeal was proper only if it meets the requirements for nunc pro tunc relief, such as a breakdown in the administrative process or non-negligent circumstances. Although one issue to be addressed at the

---

[7] The Board's regulation has also subsequently been amended to allow for 21 days to appeal.

9

hearing was the timeliness of the appeal, our review of the transcript reveals that aside from the Referee referencing that timeliness was an issue, (*id.* at 56), there was no other discussion related to that topic.

While not an advocate for a pro se claimant, this Court has repeatedly held that

> [t]he referee has a responsibility, therefore, to assist a pro se claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed to [e]nsure that compensation will not be paid in cases in which the claimant is not eligible and that compensation will be paid if the facts, **thoroughly developed**, entitled the claimant to benefits.

*Bennett v. Unemployment Comp. Bd. of Rev.*, 445 A.2d 258, 259 (Pa. Cmwlth. 1982) (emphasis in original) (quotation and citation omitted). *See also Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 846 n.8 (Pa. Cmwlth. 2017); *Coates v. Unemployment Comp. Bd. of Rev.*, 676 A.2d 742, 744 n.3 (Pa. Cmwlth. 1996). This is not a court-made requirement, but one founded in the Board's regulations. *See* 34 Pa. Code § 101.21(a) ("Where a party is not represented by counsel[,] the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.") *See also Coates*, 676 A.2d at 744 n.3 ("highlight[ing] the importance of the referee's responsibility under 34 Pa. Code § 101.21"). A "referee, of course, need not advise a party on evidentiary questions or on specific points of law." *Bennett*, 445 A.2d at 260. However, a referee "must act reasonably in assisting in the development of the **necessary** facts." *Id.* (emphasis in original). In *Bennett*, we reviewed "the very sparse record and [] the two-page hearing transcript" and determined that the referee, in addition to not informing the claimant of her rights, "did not ask her questions

10

sufficient to enable" the claimant to establish a necessary and compelling reason for voluntarily quitting her employment. *Id.* Because the hearing was "less than full and fair and did prejudice the rights of th[e] claimant," we determined the error was not harmless and warranted reversal and remand. *Id.*

While the Referee here did advise Claimant of his rights, (C.R. at 55), the eight-page transcript here is devoid of any questions from the Referee related to the timeliness of the appeal. After identifying the exhibits, the remainder of the discussion related to the two missing payments. (C.R. at 57-62.) At the close of the hearing, the following exchange took place between the Referee and Claimant:

R Okay. Sir, is there anything else that you wanted to add at this time?

C No, is there anything else that I should add to help my case here or?

R I don't have any other questions at this time.

C Okay. I think that's everything.

R All right. Thank you.

(*Id.* at 62.) There is no indication the Referee, despite Claimant's inquiry, took any steps to ensure the "**necessary** facts" related to timeliness, which was clearly an issue before the Referee, were "adequately," let alone "**thoroughly** developed." *Bennett*, 445 A.2d at 259-60 (emphasis in original).

As Claimant was prejudiced by this omission, we must reverse the Board's Order and remand for development of the record on the timeliness issue, including whether Claimant is entitled to nunc pro tunc relief. Because the outcome of the appeal of the nonfraud overpayment naturally flows from a determination on the merits of the appeal of the Monetary Redetermination, that Order must also be reversed for further consideration.

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Evans, : CASES CONSOLIDATED
          Petitioner :
                               :
          v. :  No. 225 C.D. 2023
                               :
Unemployment Compensation :
Board of Review, :
          Respondent :


Christopher Evans, :
          Petitioner :
                               :
          v. :  No. 226 C.D. 2023
                               :
Unemployment Compensation :
Board of Review, :
          Respondent :

## **O R D E R**

**NOW**, June 7, 2024, the Orders of the Unemployment Compensation Board of Review, dated February 22, 2023, are **REVERSED**, and these matters are **REMANDED** for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

_____

**RENÉE COHN JUBELIRER,** President Judge